No. 23-2511

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

JOHN JUNIOR TAYLOR,

Appellant,

v.

SUPERINTENDENT DALLAS SCI, ATTORNEY GENERAL
PENNSYLVANIA and DISTRICT ATTORNEY DAUPHIN COUNTY,

Appellees.

_____

BRIEF FOR *AMICUS CURIAE* PENNSYLVANIA
ASSOCIATION OF CRIMINAL DEFENSE LAWYERS
IN SUPPORT OF APPELLANT JOHN JUNIOR TAYLOR

_____

_____

On Appeal From the Orders Entered in the United States
District Court for the Middle District of Pennsylvania
on June 22, 2023 and July 25, 2023 at No. 1:18-CV-00910

_____

Patrick A. Casey                    Thomas F. Burke
Attorney ID No. 50626               Attorney ID No. 320311
Donna A. Walsh                      Ballard Spahr LLP
Attorney ID No. 74833               1735 Market Street, 51st Floor
Myers, Brier & Kelly, LLP           Philadelphia, PA 19103
425 Biden Street, Suite 200
Scranton, PA 18503

*Counsel for Amicus Curiae,*
*Pennsylvania Association of Criminal Defense Lawyers*

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT .......................................................iv

STATEMENT OF THE *AMICUS CURIAE* ....................................................1

SUMMARY OF THE ARGUMENT ................................................................2

ARGUMENT ................................................................................................4

    I.    The Right To Conflict-Free Counsel Is Fundamental and Guaranteed by the Sixth Amendment ....................................................4

    II.    A Disqualifying Conflict Is Not Automatically Cured By Withdrawal From One of Two Conflicting Representations ...............7

    III.    Defense Counsel's Ethical Duties Owed to the Prosecution Witness Hampered His Cross-Examination .......................................10

CONCLUSION .............................................................................................13

# TABLE OF AUTHORITIES

## CASES

*Anders v. California*, 386 U.S. 738 (1967) ...................................................4

*Cuyler v. Sullivan*, 446 U.S. 335 (1980) ...............................................2, 5, 6, 10, 11

*Gideon v. Wainright*, 372 U.S. 335 (1963) ................................................4

*Government of Virgin Islands v. Zepp*, 748 F.2d 125 (3d Cir. 1984) .......................4

*Harmer v. Superintendent Fayette SCI*, No. 19-3146, 2021 WL 3560666
  (3d Cir. Aug. 12, 2021) .......................................................6

*Herring v. New York*, 422 U.S. 853 (1975) ................................................2

*Holloway v. Arkansas*, 435 U.S. 475 (1978) ................................................5

*Mickens v. Taylor*, 535 U.S. 162 (2002) ...................................................5

*Perillo v. Johnson*, 205 F.3d 775 (5th Cir. 2000) ........................................9

*Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348 (6th Cir. 1993) ..........................9

*Strickland v. Washington*, 466 U.S. 668 (1984) ...........................................6

*United States v. Cronic*, 466 U.S. 648 (1984) ..........................................2, 4

*United States v. Dolan*, 570 F.2d 1177 (3d Cir. 1978) ...................................5

*United States v. Gambino*, 864 F.2d 1064 (3d Cir. 1988) ................................6

*United States v. Millsaps*, 157 F.3d 989 (5th Cir. 1998) ................................9

*United States v. Moscony*, 927 F.2d 742 (3d Cir. 1991) ..................................8

*United States v. Stewart*, 185 F.3d 112 (3d Cir. 1999) .................................8

*United States v. Voight*, 89 F.3d 1050 (3d Cir. 1996) ..................................8

*Wheat v. United States*, 486 U.S. 153 (1988) ....................................................4, 5, 8

## STATUTES

U.S. Const. amend. VI ........................................................................................4

28 U.S.C. § 2254(d)(1)......................................................................................2

28 U.S.C. § 2254(d)(2)......................................................................................2

Fed. R. App. P. 26.1 ........................................................................................iv

Fed. R. App. P. 26(a)(2)....................................................................................1

Fed. R. App. P. 29(a)(4)(E) ..............................................................................1

Fed. R. Crim. P. 44(c)(2) ...............................................................................5, 6

Pa. R. Prof. Conduct 1.6(e) ...............................................................................7

Pa. R. Prof. Conduct 1.9(a) ...............................................................................7

Pa. R. Prof. Conduct 1.9(c)(1) ..........................................................................7

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1, Pennsylvania Association of Criminal Defense Lawyers ("PACDL") states that it has no parent corporation and that no publicly held corporation owns 10% or more of its stock.

## STATEMENT OF THE *AMICUS CURIAE*

PACDL, founded in 1988, is a professional association of criminal defense lawyers who are admitted to practice in federal and state courts in the Commonwealth of Pennsylvania. PACDL and its members are dedicated to ensuring equal justice under law for persons accused of criminal offenses. PACDL's mission is to educate, advocate and inspire by providing support for criminal defense lawyers, promoting effective competence, levelling the playing field, and protecting individual freedoms.

In furtherance of this mission, PACDL regularly files *amicus* briefs to provide context and analysis in matters affecting the criminal justice system. As an organization of criminal defense practitioners, PACDL has a particular interest in this case involving the right to conflict-free counsel guaranteed by the Sixth Amendment to the United States Constitution and the partisan advocacy that is the hallmark of our criminal justice system.

Pursuant to Fed. R. App. P. 29(a)(2), PACDL states that counsel for Appellant John Junior Taylor, Frederick W. Ulrich, Esquire, and counsel for Appellees, Ryan H. Lysaght, Esquire, consented to PACDL filing an *amicus* brief.

Pursuant to Fed. R. App. P. 29(a)(4)(E), PACDL states that no other person or entity has paid for the preparation of, or authored, this brief in whole or in part.

## SUMMARY OF THE ARGUMENT

"An accused's right to be represented by counsel is a fundamental component of our criminal justice system." *United States v. Cronic*, 466 U.S. 648, 653 (1984). The guarantee of effective assistance of counsel is intended to ensure fairness in the adversary criminal process.  Indeed, "[t]he very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free."  *Id.* at 655 (quoting *Herring v. New York*, 422 U.S. 853, 862 (1975)).  Unless a defendant has "counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980) (citations omitted).  When such a trial results in a criminal conviction, the defendant has been unconstitutionally deprived of his liberty.  *Id.* (citation omitted).

Appellant John Junior Taylor is entitled to *habeas corpus* relief because the Pennsylvania state courts rulings on his claims were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," and were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).  More specifically, Mr. Taylor was denied the fundamental right to conflict-free advocacy guaranteed by the Sixth Amendment and the corresponding

right to due process. Until seven days before trial, Mr. Taylor's counsel also represented the government's primary witness. Defense counsel owed continuing duties of loyalty and confidentiality to the government's witness throughout the trial and, as the trial transcript reflects, cross-examination of the government's witness was compromised as a result of defense counsel's divided loyalties. Mr. Taylor was denied the right to counsel in violation of the Sixth and Fourteenth Amendments. He is entitled to a new trial with the assistance of unconflicted counsel.

# **ARGUMENT**

## **I.    The Right To Conflict-Free Counsel Is Fundamental and Guaranteed by the Sixth Amendment.**

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The right to assistance of counsel is fundamental and essential to a fair trial and therefore applicable to the states.  *Gideon v. Wainright*, 372 U.S. 335, 343-44 (1963).

The essential aim of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant."  *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Cronic*, 466 U.S. at 656 (Sixth Amendment guarantees that "the accused 'have counsel acting in the role of an advocate'") (quoting *Anders v. California*, 386 U.S. 738, 743 (1967)).    The right guaranteed by the Sixth Amendment is the right to a defense conducted by an attorney who is free of conflicts of interest.  *Wheat*, 486 U.S. at 161-63; *see also Government of Virgin Islands v. Zepp*, 748 F.2d 125, 131 (3d Cir. 1984) (Sixth Amendment guarantee of effective assistance of counsel encompasses "right to counsel's undivided loyalty") (citation omitted).  As expressly recognized by the Supreme Court:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. . . .  [A] conflict may . . . prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in

order to minimize the culpability of one by
emphasizing that of another.

*Holloway v. Arkansas*, 435 U.S. 475, 489-90 (1978); *see also Mickens v. Taylor*, 535

U.S. 162, 168 (2002) ("joint representation of conflicting interests is inherently

suspect, and . . . counsel's conflicting obligations to multiple defendants 'effectively

sea[l] his lips on crucial matters' and make it more difficult to measure the precise

harm from counsel's errors," thereby implicating the *Sullivan* standard) (quoting

*Holloway*, 435 U.S. at 489-90).

"Not only the interest of a criminal defendant but the institutional interest in

the rendition of just verdicts in criminal cases may be jeopardized by unregulated

multiple representation." *Wheat*, 486 U.S. at 160. In reaching this conclusion, the

Supreme Court quoted from this Court as follows:

> [W]hen a trial court finds an actual conflict of interest
> which impairs the ability of a criminal defendant's
> chosen counsel to conform with the ABA Code of
> Professional Responsibility, the courts should not be
> required to tolerate an inadequate representation of a
> defendant. Such representation . . . constitutes a
> breach of professional ethics and invites disrespect
> for the integrity of the court . . . .

*Id.* at 162 (quoting *United States v. Dolan*, 570 F.2d 1177, 1184 (3d Cir. 1978)).[1]

---

[1]    In the federal system, judges are obligated to conduct an on-the-record
colloquy to inquire about the existence of a conflict and to take appropriate measures
to protect the accused's right to counsel. Rule 44(c)(2) of the Federal Rules of
Criminal Procedure states in pertinent part:

Denial of the right to conflict-free counsel is sufficient to mandate reversal without a showing of actual prejudice. "Prejudice is presumed . . . if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (quoting *Sullivan*, 446 U.S. at 348-50)); *see also United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988) (prejudice is presumed where "there was an actual conflict of interest which adversely affected [counsel]'s performance"); *Harmer v. Superintendent Fayette SCI*, No. 19-3146, 2021 WL 3560666, at *3 n.6 (3d Cir. Aug. 12, 2021) (assuming without deciding that *Sullivan* applies in cases of successive representations). For purposes of *habeas corpus* relief, this standard constitutes "clearly established federal law, as determined by the Supreme Court," and the District Court committed reversible error in concluding that the underlying state-court decisions were not contrary to, or an unreasonable application of, Supreme Court precedent.

---

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2).

## II.     A Disqualifying Conflict Is Not Automatically Cured By Withdrawal From One of Two Conflicting Representations.

Defense counsel's representation of both Mr. Taylor and his primary accuser is an undeniable conflict of interest.  Both the state courts and the court below found that, although defense counsel's representation of Mr. Taylor and his primary accuser presented an actual conflict of interest, there was no Sixth Amendment violation because defense counsel withdrew from representing the prosecution witness seven days before Mr. Taylor's trial began.  This is a plain misapprehension of the Sixth Amendment.

The duties of loyalty and confidentiality which lawyers owe to clients apply equally to current as well as former clients.  *See*, *e.g.*, Pa. R. Prof. Conduct 1.6(e) ("The duty not to reveal information relating to representation of a client continues after the client-lawyer relationship has terminated."); Pa. R. Prof. Conduct 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."); Pa. R. Prof. Conduct 1.9(c)(1) ("A lawyer who has formerly represented a client in a matter . . . shall not thereafter . . . use information relating to the representation to the disadvantage of the former client . . . or . . .  reveal information relating to the representation . . . .").  Accordingly, after termination of a lawyer-client relationship, lawyers have continuing duties not

to use or disclose client confidences, particularly where that would operate to the disadvantage of the former client.[2]

Unsurprisingly, this Court has recognized on many occasions that the potential for actual conflict persists notwithstanding the lawyer's withdrawal from one of the representations at issue. *See United States v. Stewart*, 185 F.3d 112, 121-22 (3d Cir. 1999) (affirming disqualification of attorney who had previously represented government witnesses, noting that defendant's "right to effective counsel could have been compromised by the divided loyalties of his own attorney"); *United States v. Voight*, 89 F.3d 1050, 1078 (3d Cir. 1996) (affirming disqualification of attorney, reasoning that, "[s]ince there was a strong possibility that [witness] might face cross-examination by a former attorney, there was a serious potential for a conflict of interest which . . . warranted disqualification"); *United States v. Moscony*, 927 F.2d 742, 750 (3d Cir. 1991) ("Conflicts of interest arise

---

[2]    The District Court suggested that the ethics rules are not "determinative" in evaluating conflicts of interest, Slip op. at 19, but there can be no dispute that the rules of professional conduct properly inform judicial evaluation of conflicts of interest. The Supreme Court expressly recognized the application of the ethical rules in assessing whether multiple representations violate the Sixth Amendment. *See*, *e.g.*, *Wheat*, 486 U.S. at 160 (observing that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession" and referencing "Model Code of Professional Responsibility and Model Rules of Professional Conduct" as "impos[ing] limitations on multiple representation of clients").

whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties.") (internal citations omitted).

Further, other circuits have also found that successive representations involving the defendant and a key government witness present an actual conflict particularly where the representations are temporally close. *See*, *e.g.*, *Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000) ("Where the prior representation has not unambiguously been terminated, or is followed closely by the subsequent representation, there is more likely to be a conflict arising from defense counsel's representation of the first client."); *United States v. Millsaps*, 157 F.3d 989, 995-96 (5th Cir. 1998) (affirming decision to disqualify defense counsel who previously represented government witness even though counsel terminated representation of the witness and defendant agreed to waive conflict because "potential for divided loyalties was 'serious'"); *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1352-53 (6th Cir. 1993) (no error in disqualifying lawyer who represented both defendant and witness because lawyer "continues to have an ongoing duty to his former client, a duty which, if complied with, could have prevented him from effectively representing [the defendant]").

### III.    Defense Counsel's Ethical Duties Owed to the Prosecution Witness Hampered His Cross-Examination.

Where, as here, defense counsel owes continuing duties of loyalty and confidentiality to a government witness and the subject of the multiple representations are related, the exercise of independent judgment required by the Sixth Amendment is necessarily compromised.  Mr. Taylor's counsel admitted as much on the record.  When cross-examining the government's witness, his former client, defense counsel acknowledged that he remained bound by the duty of confidentiality owed to the witness and was precluded from asking about information he learned in confidence.  *See*, *e.g.*, Appx. 543 ("I am not allowed to ask you anything which I may know about you that nobody else knows about you.  It is called confidential relationships."); *id*. ("I will not violate that [*i.e.*, rule against breaching confidentiality].  I value my license too much to violate that."); Appx. 574 ("Since you want to get into confidential communication, you just now breached, and I am not violating the ethics by this.").  In this way, defense counsel overtly acknowledged that he could cross-examine no further because his license was on the line, thus confirming that he "actively represented conflicting interests" which "actually affected the adequacy of [the] representation."  *Sullivan*, 446 U.S. at 349-50.

While prejudice is not necessary under *Sullivan*, the constricted cross-examination substantially prejudiced the defense by suggesting improperly to the jury that defense counsel tried to prevent the government witness from testifying while requesting a conflict waiver. *See* Appx. 552 (Q: "When the heck did I tell you I was scared about you taking the witness stand? A. When you and I met on a Sunday . . . . You came to visit me on a Sunday at the prison. You sat there in the room, and that was your exact words."). The witness's testimony on cross-examination created an impression that defense counsel tried to prevent the witness from testifying because he feared the impact the testimony would have on the jury. It reached the point where defense counsel asked the witness, his former client, whether he was calling defense counsel a liar concerning a conversation between them that defense counsel was prohibited from inquiring into as a result of the privilege. *See* Appx. 553 ("Q: And if I say I didn't tell you that, then one of us is telling the truth and one is lying? A. That's the reason I wrote the letter. Q. Is one of us lying and one of us telling the truth? A. I am telling absolutely the truth."). Thus, rather than zealously attacking the government witness's credibility, the cross-examination essentially bolstered the witness's credibility.

The transcript thus demonstrates that defense counsel labored under an actual conflict through the verdict and the conflict adversely affected counsel's performance. How could it not? Defense counsel simultaneously owed duties of loyalty and confidentiality to both Mr. Taylor and the prosecution witness and, by his own admission, refused to breach the duties owed to the witness even though the witness challenged the foundation of questions presented to him on cross-examination by referencing confidential communications between them. Counsel's loyalties were *demonstrably* divided given that he could not and would not cross-examine the witness using confidential information made known to him through his representation of the witness. The state courts' finding to the contrary constituted an unreasonable application of clearly established federal law, as well as an unreasonable determination of the facts in light of the evidence presented, and the District Court committed reversible error in failing to recognize as much.

## <u>CONCLUSION</u>

For the reasons above, the decision below denying *habeas corpus* relief should be reversed and the case remanded with direction to vacate Mr. Taylor's conviction and order a new trial.

Respectfully submitted:

/s/ Donna A. Walsh
Patrick A. Casey
Attorney ID No. 50626
Donna A. Walsh
Attorney ID No. 74833
Myers, Brier & Kelly, LLP
Suite 200, 425 Biden Street
Scranton, PA 18503

/s/ Thomas F. Burke
Thomas F. Burke
Attorney ID No. 320311
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103

*Counsel for Amicus Curiae, Pennsylvania Association of Criminal Defense Lawyers*

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

I certify pursuant to Local Rule 46.1(e) that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

<u>/s/ Donna A. Walsh</u>
Donna A. Walsh

Date:   November 22, 2023

## CERTIFICATE OF COMPLIANCE AND
## VIRUS SCAN CERTIFICATION

I, Donna A. Walsh, hereby certify as follows:

1.     The foregoing brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because the brief has been prepared in proportionally spaced typeface using Microsoft Word 14 point Times New Roman font;

2.     The foregoing brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) because it contains 2585 words excluding those parts of the brief excluded by Fed. R. App. R. 32(f), as calculated using the word count function on Microsoft Word software;

3.     The text of the electronic and hard copies of this brief are identical; and

4.     A virus scan was run on the electronic copy of this brief using Trend Micro OfficeScan and no viruses were detected.

/s/ Donna A. Walsh

Date:  November 22, 2023

## **CERTIFICATE OF SERVICE**

I, Donna A. Walsh, hereby certify that a true and correct copy of the *Amicus Curiae* Brief was served upon the following counsel of record via the Court's ECF System on this 22nd day of November 2023:

Frederick W. Ulrich, Esquire
Office of the Federal Public Defender
100 Chestnut Street, Suite 306
Harrisburg, PA  17101

Ryan H. Lysaght, Esquire
Dauphin County Office of District Attorney
101 Market Street
Harrisburg, PA  17101

Susan E. Affronti, Esquire
Office of Attorney General
1000 Madison Avenue, Suite 310
Norristown, PA  19403

Ronald Eisenberg, Esquire
Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA  19103

/s/ Donna A. Walsh
Donna A. Walsh